WHIPPLE, Judge.
This is an appeal from the trial court’s judgment imposing sanctions pursuant to LSA-C.C.P. art. 863 against L. Walker Allen, R. Lee Eddy, III and Frank B. Hayne (attorneys for Susan Taylor Martin) for the filing of a contempt rule against Kenneth Glenn Martin and the law firm of Talley, Anthony, Hughes and Knight. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
By judgment rendered March 13, 1991, Mr. and Mrs. Martin were granted a legal separation.
During the community, Mr. Martin operated his business interests through many corporations, and one of the many issues in the separation suit was the respective interests of the Martins and/or their former community in these various corporations, including Martin Resources, Inc. and Martin Intrastate Gas Company (MIG).
*1192 Concurrent with the separation proceeding, a separate action was pending between Louisiana Intrastate Gas Corporation (LIG) and MIG, regarding a statewide gas contract purportedly owned by MIG, in which MIG was represented by Talley, Anthony, Hughes and Knight (“the Talley, Anthony firm”).
In connection with the LIG v. MIG litigation, Mr. and Mrs. Martin entered into an agreement styled “Agreement of Retention and Conservation,” in which the parties agreed that the LIG v. MIG litigation would continue to be handled by Charles M. Hughes, Jr. and E.B. Dittmer, II, of the Talley, Anthony firm (referred to in the agreement as “KGM Counsel”) and that KGM Counsel would keep Mrs. Martin’s attorneys informed of major developments in the litigation.
The agreement further provided:
(3.) Any funds, rights or products of rights secured pursuant to judgment, settlement or other disposition of the LIGC vs. MIGC litigation shall be held in trust by KGM Counsel and disbursed only in accordance with the terms of a final judgment ... of the rights, if any, of Susan Taylor Martin in and to them. (Footnote omitted).
As consideration for this agreement, Mrs. Martin agreed not to intervene in the pending LIG v. MIG litigation to assert her alleged ownership interest in any proceeds thereof.
Thereafter, by judgment signed August 21, 1991, the trial court (with the consent of the parties) granted an injunction in the domestic suit, which prohibited Kenneth Martin, Susan Martin, and all persons and agents acting on their behalf, among others, from alienating, encumbering, transferring or otherwise disposing of assets or funds under their control or from doing the same indirectly through seventy-two listed Martin business entities and the Taylor Russell Martin 1977 Trust.[1]
The injunction further prohibited the parties from causing the sale, transfer, encumbrance or disposal of any stock ownership; from causing any change or modification in the capital structure of any of the seventy-two listed business entities; or from issuing or granting any equity interest or rights to acquire equity interests in the Martin business entities. Martin Resources, Inc. and MIG were among the seventy-two corporations listed.
The injunction also addressed the LIG v. MIG litigation, and specifically provided as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the law partnership of Talley, Anthony, Hughes and Knight is enjoined and restrained from disposing of, alienating or encumbering any judgment proceeds or settlement proceeds received in the “Louisiana Intrastate Gas Corporation versus Martin Intrastate Gas Company” litigation, proceedings number 89-12107, 22nd Judicial District Court for the Parish of St. Tammany ... pending a partition of the former community of gains existing between Susan Taylor Martin and Kenneth Glenn Martin....
Approximately one month later, Mr. Ditt-mer received a settlement offer from Tenne-co for settlement of the LIG v. MIG litigation.[2] Eddy did not object to the dollar amount of the settlement, and Dittmer then verbally accepted the offer. Over the next several days, Mr. Dittmer and Tenneco’s attorneys drafted a written document entitled “SETTLEMENT AGREEMENT.”
On October 2, 1991, Kenneth Martin and Dittmer of the Talley, Anthony firm signed the “SETTLEMENT AGREEMENT” with regard to the LIG v. MIG litigation. This agreement contemplated that in settlement of the LIG v. MIG litigation, all shares of MIG stock would be transferred to Tenneco in exchange for $10,100,000.00 of Tenneco stock to be transferred to Martin Resources, Inc. at a future date. The settlement agreement provided, in pertinent part, as follows:
*1193 Martin Resources, Inc. and Tenneco Inc. shall enter into a transaction whereby upon closing and subject to the terms set forth herein, Martin Resources, Inc. will receive common stock of Tenneco Inc. valued at the sum of $10,100,000.00 (the “Shares”) in exchange for all stock of Martin Intrastate Gas Company (“MIG”), whose sole asset shall be all right, title and interest in and to the Statewide Contract dated August 30, 1978, which MIG received from Wells Fargo/ATC by the Assignment dated November 30, 1988 and who shall have no liabilities, contingent or otherwise....
According to the terms of the agreement, the consummation of the transactions set forth in the agreement would take place sixty business days following execution of the agreement, provided certain conditions were met. In particular, the settlement agreement granted MIG and Martin Resources, Inc. the right to terminate the agreement if MIG and Martin Resources, Inc. were “unable to obtain an acceptable opinion ... regarding the tax consequences of the stock exchange transaction.” A copy of this settlement agreement was received by Mrs. Martin’s attorney, Lee Eddy, on October 8, 1991.
By letter dated October 10,1991, Mr. Ditt-mer informed the attorney for LIG that MIG and Martin Resources, Inc. had obtained an opinion that unfavorable tax consequences would result from the stock exchange transaction set forth in the settlement agreement. Because the exchange would not be tax-free, MIG was notifying Tenneco by letter of its desire to terminate the settlement agreement. A copy of this letter terminating the settlement agreement was also forwarded to Mrs. Martin’s attorneys.
Approximately two weeks later, Mrs. Martin filed a Rule for Contempt in the domestic suit against Mr. Martin; the Talley, Anthony firm; MIG; and Martin Resources, Inc., in which she alleged that by signing the October 2, 1991, settlement agreement, which provided for the transfer of $10,100,000.00 of Tenneco stock to Martin Resources, Inc. in exchange for all stock of MIG, respondents in rule had violated the trial court’s injunction, as well as the March 13,1991, “Agreement of Retention and Conservation.” The contempt rule was signed by Mrs. Martin and her attorneys, Allen, Hayne and Eddy.
In response, the Talley, Anthony firm filed a motion for sanctions under Article 863, alleging that the rule for contempt contained “patently false” statements which “were made with knowledge of their falsity or without reasonable inquiry into their truthfulness.”
A hearing on Mrs. Martin’s rule for contempt was held on November 4, 1991, and by judgment dated December 11, 1991, the trial court found in favor of the Talley, Anthony firm and dismissed the contempt rule.
On January 15, 1992, an evidentiary hearing was held on the Talley, Anthony firm’s motion for Article 863 sanctions.[3] The trial court concluded that the imposition of sanctions against Mrs. Martin’s attorneys was warranted, and by judgment dated January 24,1992, sanctions in the amount of $1,000.00 plus filing costs were imposed against Mr. Allen, Mr. Eddy and Mr. Hayne. Each attorney was ordered to pay one-third of that amount. Allen, Eddy and Hayne appeal.[4]
DISCUSSION
In order to impose sanctions, a trial court must first find that one of the affirmative duties imposed by LSA-C.C.P. art. 863(B) has been violated. LSA-C.C.P. art. 863(D). Under the provisions of art. 863(B), an attorney certifies four things upon signing a pleading: (1) that the attorney has read the pleading; (2) that to the best of the attorney’s knowledge, information and belief formed after reasonable inquiry, the pleading is well grounded in fact; (3) that the pleading *1194 is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and (4) that the pleading is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. A violation of any one of these duties fatally infects the entire certification. Succession of Thomas, 602 So.2d 1108, 1110 (La.App. 1st Cir.1992); Shahla v. City of Port Allen, 601 So.2d 746, 753 (La.App. 1st Cir.1992).
Article 863 imposes an obligation on litigants and their attorneys to make an objectively reasonable inquiry into the facts and the law; subjective good faith will not satisfy this duty of reasonable inquiry. Shahla, 601 So.2d at 753. The factual determination by the trial court that article 863 was violated is reviewed on appeal under the “manifest error” or “clearly wrong” standard of review used by appellate courts to review trial court factual findings. Thomas, 602 So.2d at 1110.
Applying these principles to the present ease, we find no error by the trial court. In the contempt rule filed on Mrs. Martin’s behalf, appellants alleged:
Despite [the] Consent Judgment rendered herein and in direct violation of it, Kenneth G. Martin, Talley, Anthony, Hughes and Knight and Martin Intrastate Gas Company have entered into a Settlement Agreement arising out of ... Louisiana Intrastate Gas Company v. Martin Intrastate Gas Company....
[[Image here]]
The said Settlement Agreement was entered into without the knowledge and consent of Susan Taylor Martin; yet by its terms accomplishes the alienation, encumbrance, transfer, and disposal of an asset worth $10,100,000, more particularly the Statewide Gas Contract owned by Martin Intrastate Gas Company....
[[Image here]]
The signing of the Settlement Agreement by the respondents is a clear violation of the injunction issued by this Court on July 1, 1991. Furthermore, it is a violation of a contractual agreement made between Susan Taylor Martin and Talley, Anthony, Hughes and Knight, which agreement is dated March 13, 1991 and styled “Agreement of Retention and Conservation.” ...
In denying Mrs. Martin’s contempt rule, the court stated:
After a careful evaluation of the law and the evidence in this matter, the Court finds that the contempt rule should be denied and dismissed as to Talley, Anthony, Hughes, & Knight. The settlement agreement, as negotiated by the parties, was dependent upon certain events taking place, but court approval of the settlement was not one of the conditions. However, the events did not transpire as per the term [sic] of the agreement and the settlement therfore [sic] was never finalized.
In addition, Mr. Ted Dittmer, lead counsel for the law firm in the LIG-MIG litigation, testified at the hearing of this matter that he would never have entered into a binding settlement without prior court approval and the Court accept [sic] this testimony as credible. The testimony indicates that the law firm was in communication with counsel for Mrs. Martin throughout the settlement negotiations, which clearly shows that they were not taking place without her knowledge.
After carefully considering the record, we find no error in the trial court’s determination that there was no objectively reasonable basis in fact or law for the filing of a contempt rule against the Talley, Anthony firm for violation of the injunction. As the testimony and evidence shows, Mr. Allen made no investigation either by independent investigation or by inquiry regarding the stock transfer before filing the contempt rule against the Talley, Anthony firm.
When Mr. Allen was questioned at the hearing on the motion for sanctions regarding his factual inquiry prior to filing the contempt rule, the following colloquy occurred:
Q. As of the time you filed the rule for contempt did you believe that the stock in MIG had been transferred at the time you filed the rule for contempt?
*1195 A. I did not know if it had or not. It could have been is my best answer.
Q. Did you take any steps to determine before filing the rule for contempt of whether or not it had been transferred? A. No.
However, as the record shows, Mr. Allen alleged in the contempt rule filed weeks after being notified of the termination of the settlement agreement that: (1) “Kenneth G. Martin, Talley, Anthony, Hughes and Knight have entered into a Settlement Agreement”; (2) “[t]his Settlement Agreement provides for transfer of $10,100,000 worth of Tenneco, Inc. common stock to Martin Resources, Inc., in exchange for all stock of Martin Intrastate Gas Company”; and (3) “[t]he said Settlement Agreement was entered into without the knowledge and consent of Susan Taylor Martin; yet by its terms accomplishes the alienation, encumbrance, transfer, and disposal of an asset worth $10,100,000.” .(Emphasis added).
We recognize that the imposition of sanctions should only occur when the evidence is clear that there is no justification for the legal right exercised. See Fairchild v. Fairchild, 580 So.2d 513, 518 (La.App. 4th Cir. 1991). However, we find by appellants’ own admissions, the rule for contempt was filed without adequate investigation of the facts or legal justification. Thus, sanctions were properly imposed.[5]
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against appellants, L. Walker Allen, II; R. Lee Eddy, III; and Frank B. Hayne.
AFFIRMED.

. Taylor Martin is the minor child of Mr. and Mrs. Martin.

. The relationship between Tenneco and LIG in the LIG v. MIG litigation is not clear from the record of these proceedings.

. At the hearing, in addition to the testimony of Mr. Allen and Mr. Lewis, the testimony and exhibits from the prior contempt hearing were introduced by stipulation of the parties.

. The Talley, Anthony firm argues in brief that appellants' appeal should be dismissed because the judgment from which they appealed was the February 7, 1992, judgment denying a new trial, rather than the January 24, 1992, judgment imposing sanctions. However, by judgment dated April 27, 1993, this court denied appellee's motion to dismiss.

. Appellants have not raised any issue on appeal as to the reasonableness of the particular sanctions imposed.